# GIAUQUE v. SALT LAKE CITY et al.

No. 2305.   Decided December 30, 1912 (129 Pac. 429).

1. TRIAL—FINDINGS—CONFORMITY TO ISSUES. Where, in an action to enjoin a city from cutting shade trees on a lot surrounded by a picket fence, the actual location of the south boundary line of the block in which the lot was situated was in issue, a finding that the south boundary line of the lot was marked by plaintiff's picket fence did not conform to the issues. (Page 94.)

2. BOUNDARIES—CONTROL. While, where the calls in a deed give an initial point and then run to some other point, as a fence, etc., stated to be a given number of feet distant from the first point, the calls for distance yield to the monument, a finding merely that a lot five by ten rods is bounded by a picket fence does not refer to the fence as a monument, and hence cannot extend the lot beyond the five by ten rods called for. (Page 96.)

3. MUNICIPAL CORPORATIONS—STREETS—SHADE TREES. A property owner is entitled to enjoin a city from cutting shade trees from a part of his lot, irrespective of whether his damage be large or small. (Page 98.)

4. EMINENT DOMAIN—STREETS. If the land on which shade trees adjacent to a sidewalk stood was owned by the abutting property owner, the city could only cut the trees by condemning the land upon paying a just compensation. (Page 98.)

5. APPEAL AND ERROR—FINDINGS—DUTY TO MAKE. The Supreme Court should not be required to make findings of fact upon the material issues, either affirmatively or negatively; that being the trial court's duty. (Page 98.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Arnold G. Giauque against Salt Lake City and another.

Judgment for plaintiff.   Defendants appeal.

REVERSED AND REMANDED.

*H. J. Dininny, Aaron Myers* and *P. J. Daly* for appellants.

*Young & Moyle* for respondent.

FRICK, C. J.

Respondent brought this action to enjoin the appellants from removing a certain fence and from cutting down certain shade trees which, it is alleged, are on respondent's property, and which appellants will remove and cut down unless restrained. For the purposes of this decision we shall not refer to the appellant the James Kennedy Construction Company, since that company claims no rights as against respondent.

Respondent, in his complaint, in substance alleged that he is, and for many years immediately preceding the commencement of the action was, the owner of five by ten rods in Lot 2, Block 29, Plat A, Salt Lake City Survey; that said property abuts on Sixth South Street, and the south boundary line thereof is marked by a substantial picket fence which has been "in its present location . . . for more than thirty years last past;" that about one and one-half feet north of said fence there is a row of six shade trees which greatly add to the value of said property, all of which is used for residential purposes; that, unless restrained, appellant will remove said picket fence and cut down said trees, and will construct a permanent cement sidewalk along the south side of said property where said fence and trees now stand; that, by removing said fence and cutting down said trees, respondent will sustain irreparable injury and damage; that appellant claims "some right, title, or interest in or to said property or some part thereof," which claim, it is alleged, is "unlawful and void."

Upon the foregoing allegations, respondent prayed judgment that appellant be required to set forth the nature of its claim and that it be "enjoined from cutting down or interfering with said trees and said fence, . . . and that plaintiff (respondent) be adjudged to be the owner of said premises, and that such other and further order in the premises as is just be made." Appellant, in answer to the complaint, set up various defenses. It denied respondent's ownership of the property described in the complaint, and denied that the south side thereof was marked by a picket

fence; admitted that certain trees were standing on the south of respondent's property, but denied that the same were on his property; admitted that it intended to cut down the trees and remove the fence mentioned in the complaint, and that it intended to construct a permanent cement sidewalk in front of the property described in the complaint, but averred that the trees and fence aforesaid were standing in the street, and that no part of said sidewalk, when laid as contemplated, would overlap or be laid on the property described in the complaint. Appellant further averred that respondent had erected said fence and planted said trees in said Sixth South Street, and that he had trespassed on said street to the extent of 6.47 feet on the east line of his property, and to the extent of 7.15 feet on the west line thereof, and that said strip was part of Sixth South Street, and that the title thereof was in appellant. Appellant further denied each and every other allegation contained in said complaint. Appellant further averred in its answer that Salt Lake City, including said Sixth South Street, was located and platted on the public lands of the United States; that said street was platted 132 feet wide, which plat was made long before a patent was obtained for the land on which the same was platted; that in June, 1872, a patent was duly issued by the United States to the mayor of Salt Lake City for the lands platted as aforesaid, including said Sixth South Street, which patent was issued under and by virtue of an act of Congress entitled, "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867 (Act March 2, 1867, c. 177, 14 Stat. 541), and that respondent and his predecessors in title obtained title to the premises in question through the mayor aforesaid, subject to the provisions of the act aforesaid, and subject to the rights of appellant as the same appear from the plat made as aforesaid. Appellant further averred that, by reason of what was contained in said act and the acts amendatory thereof, respondent was estopped from claiming any portion of said Sixth South Street. It was further averred that respondent was wrongfully claiming the strip of land herein-

before referred to, and that the same was in excess of his five by ten rods. Appellant also averred that the action was barred by virtue of certain sections, naming them, of the Compiled Laws of 1876, of the Compiled Laws of 1888, of the Revised Statutes of 1898, and of the Compiled Laws of 1907.

Upon substantially the foregoing averments, appellant prayed judgment that the title to the strip of ground to which reference has been made as being within Sixth South Street be adjudged to be in appellant, and that respondent's complaint be dismissed. Respondent filed a reply to the foregoing answer in which he set up facts which he claimed constitute an estoppel, and also pleaded the statute of limitations, and claimed title to the strip of ground aforesaid by adverse possession.

Upon the foregoing issues, a preliminary hearing was had to determine whether a temporary injunction should issue pending the hearing upon the merits. After the preliminary hearing, the district court issued a temporary injunction pending the action. Some time thereafter, by consent of the parties, the case was submitted to the court upon the evidence adduced at the preliminary hearing, and the court, upon such evidence, made findings of fact; the material portions of which are as follows:

"(2) That plaintiff is the owner of and in possession of the following real property located in Salt Lake City, Utah: Commencing at a point two and one-half rods west of the southeast corner of Lot 2, Block 29, Plat A, Salt Lake City Survey; thence west five rods; thence north ten rods; thence east five rods; thence south ten rods to beginning.

. . .

"(3) That the south side of said property where said property adjoins said Sixth South Street is marked by a substantial picket fence, and said fence has been in its present location and has marked the south boundary of said property for more than thirty years last past, and located on the north side of said fence on said land owned by plaintiff, and about one and one-half feet from said fence, is a row of poplar

trees, about six in number, planted and used for shade trees, and valuable to plaintiff and to said premises and to said residence located thereon.

"(4)   That said defendants have marked said trees to be cut down, and are intending to cut them down, and also are intending to cut down said fence, and will cut down said trees and said fence at once unless restrained by order of court, and are intending to, and will, unless restrained, lay a cement sidewalk across the south five or six feet of the entire south side of said premises.

"(5)   That the value of said trees or the damage done by the destruction of said fence and the taking of said property for said sidewalk, in case it is so taken, cannot be estimated or determined, and damages will not compensate, and plaintiff has no adequate remedy at law.

"(6)   The court further finds that no part of said property above described or referred to is a part of the public streets of Salt Lake City, and that defendants, and neither of them, have any right, title, or interest therein, or to any part thereof."

Upon these findings the court also made conclusions of law declaring the respondent to be the owner of the property described in the findings aforesaid; that appellant had no interest therein, and had no right to enter upon the same, and that a decree should be entered enjoining appellant from entering upon said property and from removing said fence and from cutting down said trees, and from interfering in any way with said premises.   A decree enjoining appellant as aforesaid was accordingly entered, from which this appeal is prosecuted.

By referring to the issues presented by the pleadings and the findings as the same appear in the foregoing statement, it is apparent that the findings do not respond to the issues. All that the court in effect found is that the title to the five by ten rods described in his complaint is in respondent; that the south side of the tract is marked by a picket fence which has been there for more than thirty years; that a little to the north of said fence are certain shade trees

which, with said fence, appellant threatens and intends to cut down and remove; and that no part of the property described "is a part of the public streets of Salt Lake City." Appellant's counsel insist that the court erred in making all of said findings, and that they are not supported by the evidence. It is further urged by them that the conclusions of law and judgment are not supported by the findings.

The difficulty with the findings is that they respond to neither the issues nor the evidence adduced at the hearing, all of which is preserved in a bill of exceptions filed in this court. In appellant's answer the source of respondent's title was fully set forth, and it was there averred that the title to the property in question was obtained, subject to the provisions of an act of Congress. In the act referred to, it was provided as follows:

"That, when the title to said lands shall be held by the corporate authorities of any town or city, all lands designated for public use by such corporate authorities as streets, lanes, avenues, alleys, parks, common public grounds, shall vest in, and be held by, the corporate authorities, and *shall not be claimed adversely by any person or persons whatsoever.*" (Italics ours.) (Comp. Laws 1876, p. 383.)

The title to all the public streets and grounds is therefore in Salt Lake City, the appellant. Nor is it disputed that the street in question was in fact platted before the land in question was patented to the mayor of Salt Lake City in trust and for the use of those who occupied or claimed particular parts of the platted portions of said city. The act, therefore, by its terms prohibited any person from claiming any portion of any platted street by reason of any fact or condition that arose or existed prior to or at the time the patent to the land was issued. Any right, therefore, if any there be, to any portion of any street, must rest upon some claim or right which was initiated after the patent was issued as aforesaid. Now, under the evidence in this case, it seems to us several matters are established beyond all question. For example, the evidence is undisputed that the blocks as originally surveyed and platted were intended to

be 660 feet square, and that the streets were to be 132 feet wide, measured between the block lines. It is also clearly shown by the evidence that there are no field notes of the original survey and plat of Salt Lake City; that subsequent surveys were made by authority of the city council, which very frequently disagreed with fences and other improvements made on the surface of the ground. By reason of that fact, the original locations of both street and lot boundaries in many instances are left in doubt.

In the case at bar appellant proved that in establishing the boundaries of Block 29, in which the property in question is located, the city engineer attempted to do so partly from monuments which were taken as some of the monuments of the original survey, and which were found in the intersections of streets some distance from the block in question, and partly from the fences and improvements found on the surface of the ground in said block; that in doing so it was established that in allotting the block in question its full 660 feet, and in giving respondent his full five by ten rods and allowing 132 feet for Sixth South Street, respondent's fence was something over six feet in the street on the east, and something over seven feet therein on the west line of his property, and that the strip in question is in excess of the ten rods to which respondent is entitled under the calls in his title papers. While respondent's counsel in their brief and argument dispute appellant's claims in this regard, yet appellant's evidence, as already stated, is clearly to that effect, and is not met by any positive evidence to the contrary. The actual location of the south boundary line of the block in question was therefore one of the principal issues in the case. If the boundary line is at the point where respondent's fence is standing, then there can be no question concerning respondent's right to an injunction. If, however, the boundary line is where it is claimed to be by appellant, namely, about seven feet north of respondent's fence, then respondent must establish his right to the strip of ground which would then be in Sixth South Street upon other grounds. The court made no findings with respect

to where the south boundary line of Block 29 is in fact located. All it found is that the south boundary line of respondent's five by ten rods is marked by his fence, and, in view of this, the title to said five by ten rods is quieted in him. Appellant at no time claimed any right, title, or interest in the five by ten rods deeded to respondent. It, however, claimed that his five by ten rods did not extend southward to the fence in question, but that he claimed a strip of ground in excess of ten rods in length. At the hearing we think appellant established its contention in that regard. Respondent, however, disputes appellant's contention. The court, therefore, should have specifically found where the south boundary line of Block 29 is located, and whether such boundary is as far south as respondent's fence. If the court had found the south boundary line of said block to be at the point where respondent's south fence is located, then the real issue between the parties would have been settled by a proper finding. The court, however, did not so find. Nor did it find that respondent's south line is coterminus with the south boundary of Block 29. What the court found, in effect, is that the south boundary line of appellant's five by ten rods is marked by a picket fence. This finding, as appellant's counsel contend, is not supported by the evidence, in this: That the undisputed evidence is to the effect that respondent's ten rods do not extend to the fence line by over six feet on the east line and by over seven feet on the west line thereof. According to this evidence, rspondent therefore has a strip of ground five rods long by about seven feet wide in excess of his ten rods, the whole of which appears to be within the 132 feet originally allotted to Sixth South Street.

It must not be assumed that the finding in question is like the calls in a deed which give the initial point and then go to some other point, such as a post, a fence, or a tree, which is stated to be a given number of feet, yards, or rods distant from the initial point. Under such circumstances, the distance must yield to the monument called for. In the finding in this case, however, it is said that the

five by ten rods are bounded by a picket fence and this fence is not used as a call or a monument, but merely as indicating that respondent's ten rods are inclosed by the fence. In other words, the finding does not and cannot extend respondent's five by ten rods beyond the exact number of rods called for, as might be done if the fence were treated as a call or monument. In view of the evidence, therefore, there is a strip of ground in addition to the five by ten rods which is claimed by respondent. As we said before, if respondent is entitled to this strip, it must be for reasons other than those disclosed by the findings.

From anything that is said above, we do not wish to be understood as holding that, as a matter of fact, the original south boundary line of Block 29 may not be where respondent's fence line is located, but what we hold is that the court has not so found. It may also be that, if the boundary is not so far south as the fence, the city may nevertheless have regarded and treated said fence as marking the boundary line between respondent's property and the north boundary of Sixth South Street for such a length of time or under such circumstances as will prevent it from disputing said boundary line at this late date. As the findings now stand, however, a legal conclusion to the effect just stated cannot be based thereon. It may also be that, if it be found that the original or true south boundary line of Block 29 is not as far south as respondent's fence now is, he nevertheless may be entitled to the strip of ground for other reasons, as, for example, under his pleas of adverse possession or estoppel. But whether respondent may be entitled thereto for the reasons last stated or not, is not before us, and upon that phase of the case we express no opinion. All that we now hold is that, as the findings now stand, they do not respond to the issues, nor, for the reasons stated, do they support the judgment entered in this case. Nor is the finding that, in case said fence is removed and said trees cut down, the damages resulting to respondent's property cannot be estimated, supported by any evidence.

42 Utah 7

True, that finding may not be very material, since if the strip of ground in question belongs to respondent for any reason he is entitled to an injunction regardless of whether his damages are great or small.

The only remedy appellant would have in such event would be to condemn the strip and yield to respondent just compensation therefor. We therefore mention that finding for the sole reason that the claim may not hereafter be made that we deemed it a proper or material finding or one necessary to authorize an injunction, or as preventing appellant from proceeding to condemn the strip in case it be found that the same belongs to respondent, and it is the desire of appellant to condemn it for the purposes set forth in its answer.

In conclusion we desire to state that in view that this case was finally decided upon the evidence adduced' at the preliminary hearing for a temporary injunction, and that the issues were apparently not fully tried out, and because of the very incomplete state of the findings when compared with the issues presented by the pleadings, it might be unfair to both parties if we either attempted to make findings or directed what they should be.

Moreover, this court should not be called upon to make the findings of fact. That is the duty of the trial courts, and they should see to it that, in the preparation of findings, they respond to the issues, and that upon all material questions either affirmative or, in case there is no evidence, negative findings be made.

In furtherance of justice, therefore, and in fairness to the parties and to the trial court, we have concluded to reverse the judgment and to remand the cause for a new trial. Such is the order. Appellant to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.